UNITED STATES of America, Plaintiff,

v.

**Jesus Alberto TOBON–SIERRA, William Jesus Balvin, Juan Antonio Velez–Montoya and Raymond Garcia, a/k/a "Tony," and Francisco Siso, Defendants.**

**No. S1 96 CR. 374 (DLC).**

United States District Court,
S.D. New York.

Jan. 14, 1997.

Robert B. Buehler, Assistant United States Attorney and Mary Jo White, United States Attorney, Southern District of New York, New York City, for the U.S.

Steven Statsinger and Leonard F. Joy, The Legal Aid Society, New York City, for Defendant Jesus Alberto Tobon–Sierra.

Anthony R. Cueto, New York City, for Defendant William Jesus Balvin.

Charles Lavine, Forest Hills, NY, for Defendant Juan Antonio Velez–Montoya.

Hal Meyerson, New York City, for Defendant Raymond Garcia.

Edward S. Panzer, New York City, Attorney for Defendant Francisco Siso.

## OPINION

COTE, District Judge:

On May 21, 1996, defendants Jesus Alberto Tobon–Sierra ("Tobon–Sierra"), William Jesus Balvin, Juan Antonio Velez–Montoya, and Raymond Garcia ("Garcia") were indicted for conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 846. On July 25, 1996, in a superseding indictment, Francisco Siso ("Siso") was also indicted for participating in the conspiracy.

On October 1, 1996, this Court issued an Opinion denying Garcia's original request for a suppression hearing and his motion to suppress on the ground that Garcia lacked standing to raise the issue because he had not submitted an affidavit indicating his privacy interest in the automobile that was the subject of the search. Garcia has now filed an affidavit in support of his motion. For the reasons stated below, Garcia's renewed motion to suppress is denied.

### Facts

For the purposes of this motion, the following facts are undisputed. This case involves a drug trafficking conspiracy which began in or about April 1996. In April 1996, Tobon–Sierra began meeting with a confidential informant to discuss a purchase of cocaine from the informant. The purchase was

eventually scheduled to take place on May 8, 1996 at a McDonald's restaurant in Queens.

On May 8, while being surveilled by DEA agents, the informant met with Tobon–Sierra inside the McDonald's. They were joined at various times by Balvin and Velez–Montoya. Subsequently, Velez–Montoya left the Mc-Donald's, and later returned in a blue Nissan automobile. Following directly behind the Nissan was a grey Buick which was driven by Garcia. Both cars were travelling at a "low rate of speed," and parked directly in front of the McDonald's. Velez–Montoya left the Nissan and entered the McDonald's, while Garcia remained in the Buick. While Velez–Montoya was in the McDonald's, the informant left the restaurant and spoke with Garcia, who was still sitting in the Buick. Garcia told the informant that he had given $19,000 to Velez–Montoya for the cocaine.

Soon after the informant spoke with Garcia, the DEA agents began to arrest the conspirators. Two or three agents wearing identifying jackets began moving toward the Buick from behind. Garcia turned around in the car, looked out the rear window, and then immediately moved to the passenger side and exited the Buick. Garcia began moving "quickly" away from the Buick, and was stopped and arrested "approximately five feet" from the car. Garcia does not dispute any of these facts, but observes in his affidavit that he was "probably more than five feet from the Buick" at the time of his arrest.

After Garcia was arrested and handcuffed, an agent immediately searched the Buick and found a hidden compartment above the glove compartment in the dashboard. Another agent found a calculator and a scale in the glove compartment. Based on these discoveries, the agents impounded the vehicle. On May 14, 1996, a DEA forensic chemist tested the hidden compartment, and found traces of cocaine. The DEA also determined that the Buick was registered to Felipe DeLacruz, who was listed at a different address than the one Garcia gave to the DEA upon his arrest.

Garcia's affidavit indicates that he "believed" that he was in legal possession of the Buick, and that he purchased the car in January 1996 for what he describes as "fair consideration." Garcia further states that he "believed" that he received good title at the time of the purchase.

On October 7, 1996, after the Court had denied Garcia's original motion, the Government informed the Court that it now believed that the defendant's name was not actually "Raymond Garcia," despite the fact that the defendant identified himself as Raymond Garcia to the DEA agents who arrested him. At the time of his arrest, the defendant possessed an identification card from his employer indicating that he was "Raymond Garcia," and the defendant gave both the DEA and Pretrial Services a social security number and date of birth for "Raymond Garcia." The defendant also signed the affidavit filed in support of his motion to suppress with the name "Raymond Garcia." When the Government learned that the "real" Raymond Garcia had been reporting regularly to his probation officer after having been convicted of attempted criminal sale of a controlled substance in the New York State Supreme Court, Bronx County, the Government sent the defendant's fingerprints to the Federal Bureau of Investigation's special processing center. As a result of the fingerprinting examination, the defendant was identified as "Antonio Garcia," who had a more extensive criminal history than Raymond Garcia, and had an outstanding arrest warrant issued by the New York State Department of Corrections because he had escaped from a work release program. At a pre-trial conference on October 9, 1996, Garcia's counsel indicated that he did not wish to contest the Government's assertions in the October 7 letter regarding Garcia's identity. Both Garcia and the Government took the position that a hearing on the motion to suppress is unnecessary since there are no material issues of fact in dispute.

*Discussion*

Garcia moves to suppress all physical evidence seized during a search conducted by DEA agents of the automobile driven by Garcia on the day of his arrest. Garcia argues that (1) he has standing to challenge the search; and (2) that the search was not valid as incident to a lawful arrest because he

was not an "occupant" of his vehicle when he was arrested.

■ I find that the defendant—whose name is Antonio Garcia—filed a false affidavit in support of his motion to suppress insofar as the name he signed was not his real name. Since it would not be appropriate to consider a perjurious affidavit, Garcia has failed to establish that he has standing to contest the search of an automobile that is not registered in his name and for which he has failed to establish a legitimate expectation of privacy. Even if I considered Garcia's affidavit, however, I would nonetheless deny the motion to suppress.

The Government concedes that this was a warrantless search, but defends the initial search under the "search incident to a lawful arrest" exception to the warrant requirement. Generally, law enforcement officers may not conduct a search unless they first obtain a search warrant based on probable cause. *See New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 2862–63, 69 L.Ed.2d 768 (1981). There are, however, recognized exceptions to this rule, including one for a search incident to a lawful arrest. *Id.* In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court held that when a police officer lawfully arrests a suspect, that officer may conduct a search of the suspect and the area within the suspect's immediate control. *Id.* at 763, 89 S.Ct. at 2040. This rule ensures the protection of law enforcement officials by removing any weapons the suspect might have and prevents the destruction of evidence. *Id.*

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), relying in part on *Chimel*, the Supreme Court dealt with what it called the "recurring factual situation," *id.* at 460, 101 S.Ct. at 2864, of searches of automobiles incident to arrest. In order to provide guidance to police officers working in the field, the Court developed the general rule that

> when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

*Id.* The Court went on to note that "the police may also examine the contents of any containers found within the passenger compartment." *Id.* Such containers could be "open or closed," *id.* at 461, 101 S.Ct. at 2864–65, and the term "container" includes "closed or open glove compartments." *Id.* at 460 n. 4, 101 S.Ct. at 2864 n. 4.

Courts have consistently held that the defendant need not be in the automobile when the search is conducted. In fact, in *Belton*, the defendant had been taken out of the automobile and arrested, and was not in the car when the police officer conducted the search. *Id.* at 456, 101 S.Ct. at 2862. *See, e.g., United States v. Mitchell*, 82 F.3d 146, 152 (7th Cir.) ("The fact that Silva had been handcuffed and placed in the police vehicle just prior to the commencement of the search that yielded the firearm does not affect the lawfulness of the search."), *cert. denied,* —— U.S. ——, 117 S.Ct. 155, 136 L.Ed.2d 100 (1996); *United States v. Doward*, 41 F.3d 789, 791 n. 1 (1st Cir.1994) (noting that the "great weight of authority ... holds that *Belton*'s bright-line rule applies even in cases where the arrestee is under physical restraint and at some distance from the automobile during the search"), *cert. denied,* —— U.S. ——, 115 S.Ct. 1716, 131 L.Ed.2d 575 (1995); *United States v. Strahan*, 984 F.2d 155, 159 (6th Cir.1993) ("*Belton* governs when the arrestee is removed from the car prior to the time of the search."); *United States v. Muyet*, 946 F.Supp. 302, 311–12 (S.D.N.Y.1996) (holding that "the fact that Muyet was ten feet away from the car when the officers conducted the search does not render the search unreasonable").

■ Accordingly, if the DEA agents had arrested Garcia while he was still sitting in the Buick, removed him, and then searched the Buick, the search would clearly be covered by the *Belton* rule. Instead, Garcia left the Buick when he knew that the DEA agents, who were clearly identified by their jackets as agents, were closing in on him. Under both scenarios, however, Garcia left his car as the result of contact initiated by law enforcement officers. There is no reason why a search that is permitted when the officers make it to the car window to ask the

defendant to get out of the car, should not be permitted when the officers' approach to the vehicle prompts a swift-moving defendant to exit in an attempt to escape. In both cases, the defendant was in the vehicle immediately prior to being apprehended, thus establishing that he had access to the "grab" area inside the car.

Several cases have upheld searches of cars in circumstances similar to those presented here—that is, when the defendant had left the vehicle because of the approach of law enforcement officers. *See, e.g., United States v. Willis,* 37 F.3d 313, 317 (7th Cir. 1994) (defendant arrested at rear of vehicle after furtively leaving vehicle as officer approached); *Muyet,* 946 F.Supp. at 309–10 (as police approached car, defendant exited and walked ten feet away).

In *United States v. Hudgins,* 52 F.3d 115 (6th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995), the Sixth Circuit recently attempted to reconcile some of its own apparently conflicting precedent on this issue. It concluded that a search of an automobile is appropriate under *Belton* after a defendant leaves a vehicle either on his own or under arrest, so long as the decision to leave is a consequence of contact initiated by law enforcement. In *Hudgins* police officers pulled the defendant's car over, asked the defendant to step out of the car, arrested him, and then searched his car. The Court ruled that

> Where the officer initiates contact with the defendant, either by actually confronting the defendant or by signaling confrontation with the defendant, while the defendant is still in the automobile, and the officer subsequently arrests the defendant (regardless of whether the defendant has been removed from or has exited the automobile), a subsequent search of the automobile's passenger compartment falls within the scope of *Belton* and will be upheld as reasonable.

*Id.* at 119. The Court contrasted such a situation to that "where the defendant has voluntarily exited the automobile and begun walking away from the automobile before the officer has initiated contact with him." *Id.*[1]

Several Circuit Court decisions have gone even further and have approved of a search of a vehicle under the *Belton* rationale when a defendant was a recent occupant of the car and is arrested near the car without any requirement of a finding that the defendant was motivated to leave the car by the approach of law enforcement officers. *See, e.g., United States v. Snook,* 88 F.3d 605, 608 (8th Cir.1996) (defendant had stepped out of car with motor still running); *United States v. Franco,* 981 F.2d 470, 472–73 (10th Cir.1992) (defendant "moved between" his car and undercover government truck and was arrested in truck); *United States v. Arango,* 879 F.2d 1501, 1506 (7th Cir.1989) (defendant arrested one block from car and brought back near car during search), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990).

The defendant has relied on two Circuit decisions to support his motion. In *United States v. Strahan,* 984 F.2d 155 (6th Cir. 1993), police officers, pursuing a tip that the defendant was selling cocaine, followed him in their unmarked police car. The defendant parked and hurriedly left his car. The officers thought that the defendant had recognized their car as a police car. The officers left their vehicle and arrested the defendant thirty feet from his car. The Sixth Circuit held that because the defendant was thirty feet from his car, he was not an "occupant" of a vehicle, and thus *Belton* did not apply. *Id.* at 159. There is language in *Strahan* which suggests that it would approve a search whenever a defendant had recently left a vehicle because of contact initiated by the police. *Id.* It would appear from its description of the facts that the Court could have found that the defendant's decision to leave the car was so motivated, however, somewhat surprisingly, it did not discuss

1. The Court read its earlier decision in *United States v. Mans,* 999 F.2d 966 (6th Cir.), *cert. denied,* 510 U.S. 999, 114 S.Ct. 567, 126 L.Ed.2d 467 (1993), as a situation where "defendant knew he was being followed" and noted that such a case was more similar to *Hudgins* and *Belton* than it was to *Strahan,* 984 F.2d at 155, where the defendants left their car of their own accord. *Hudgins,* 52 F.3d at 119 n. 2.

those facts in explaining its ruling. More recently, and as discussed above, the Sixth Circuit in *Hudgins* has concluded that its prior decision in *Strahan* should be understood as one in which the defendant left the car of his own accord. *Hudgins,* 52 F.3d at 119 n. 2.

In *United States v. Fafowora,* 865 F.2d 360 (D.C.Cir.), *cert. denied,* 493 U.S. 829, 110 S.Ct. 98, 107 L.Ed.2d 62 (1989), the defendants parked their Jeep, and were approximately one car length away, when they were arrested. In *dicta,* the Court refused to approve the search of the vehicle under *Belton* since "the police came upon the arrestees outside of an automobile." *Id.* at 362. There was no indication in *Fafowora,* unlike here, that the defendants had left the car because of the approach of the police. The Court in *Fafowora* did uphold the search, however, on an alternative ground.

In sum, neither *Strahan* nor *Fafowora* support suppression of the search conducted here since Garcia's leaving the Buick was prompted by contact initiated by the DEA agents. Moreover, because Garcia exited the Buick after seeing the DEA agents closing in on him, this case does not require this Court to decide whether to allow a *Belton* search even where there is no evidence that the defendant left the car in response to police contact, as do the Eighth, Tenth, and Seventh Circuits. Rather, under the approach articulated by *Hudgins,* this case is governed by *Belton's* bright-line rule, and the agents were entitled to search the interior of the Buick and any containers found therein, including the glove box. Once the agents had found a hidden compartment, a calculator, and a scale in their initial search, they had probable cause to impound the vehicle for the subsequent drug testing.

*Conclusion*

Garcia's motion to suppress is denied.

SO ORDERED.