UNITED STATES of America, Appellee,

v.

**Malcolm ALEXANDER, Defendant–Appellant.**

**No. 1248, Docket 89–1655.**

United States Court of Appeals, Second Circuit.

Argued May 8, 1990.

Decided June 14, 1990.

Adina Schwartz, New York City (The Legal Aid Soc. Federal Defender Services Unit, New York City, of counsel), for defendant-appellant.

Gabriel W. Gorenstein, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., David E. Brodsky, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before ALTIMARI and MAHONEY, Circuit Judges, and CARTER, District Judge.*

ALTIMARI, Circuit Judge:

Defendant-appellant Malcolm Alexander appeals from a judgment of conviction, entered in the United States District Court for the Southern District of New York, finding him guilty of possession with intent to distribute five grams or more of a mixture containing cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B). The district court sentenced Alexander to five years' imprisonment to be followed by four years of supervised release. On this appeal, Alexander contends that his conviction should be reversed on the ground that the district court failed to suppress evidence obtained as a result of an investigative stop conducted by three law enforcement officers. The central issue presented is whether the investigative stop was so intrusive as to constitute an arrest requiring probable cause.

For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

On November 17, 1989, at approximately 6:00 p.m., Special Agent Michael Grabowski of the Drug Enforcement Administration ("DEA") and two other DEA agents were conducting surveillance from an unmarked car on Broadway between 143rd and 144th Streets in Manhattan. The agents were familiar with the neighborhood and were aware that a high volume of narcotic trafficking took place in the area. On previous occasions, Agent Grabowski had visited the area, witnessed numerous drug transac-

---

* The Honorable Robert L. Carter, *Senior Judge,* United States District Court for the Southern District of New York, sitting by designation.

tions and made several arrests for narcotics offenses. As the agents sat in their car, they observed a green Jaguar double-park at the corner of 144th Street and Broadway. The driver and the passenger, later identified as Alexander, exited the Jaguar and began walking west down 143rd Street, away from the commercial activity on Broadway. Agent Grabowski observed that as Alexander walked, he looked about furtively and appeared to be "checking-out" the area. Alexander and his companion then walked out of the agents' sight.

Approximately 25 minutes later, Alexander and the driver walked around the corner of 143rd and Broadway and back into the agents' view. Although empty handed when he left, Alexander was now carrying a brown paper bag. The agents saw Alexander put the bag into his pocket. The driver and Alexander then got into the Jaguar and began driving south on Broadway.

The agents followed the Jaguar as it signaled for turns it did not make, drove at excessive speeds and ran at least two red lights. Agent Grabowski also noticed that the driver was looking incessantly in his rear view mirror. Based on his experience in law enforcement, Agent Grabowski concluded that the driver was seeking to determine whether he was being followed by a police surveillance vehicle. After following for fourteen blocks, the agents used a red light and a siren to stop the Jaguar near Broadway and 129th Street.

The agents came to a stop behind the Jaguar and exited their car. Agent Grabowski walked toward the passenger side of the Jaguar with his gun unholstered and at his side. When he reached the car, Agent Grabowski knocked on the passenger window and informed Alexander he was a police officer. The agent directed Alexander to exit the car and to place his hands on the hood. Grabowski then frisked Alexander and felt a bulge in his jacket pocket. Unable to determine whether or not the object was a weapon, the agent reached into the pocket and squeezed the object. Based on his professional experience, Agent Grabowski determined that the object was a package containing crack vials.

The agent removed the crack vials, which were enclosed in a brown paper bag, and placed them in his own pocket for safekeeping. Alexander then was arrested, handcuffed and subjected to a complete search. Another brown paper bag was discovered in Alexander's right jacket pocket. The second bag contained 11 grams of crack cocaine. A search of the Jaguar yielded two additional vials containing crack.

Alexander and the driver, who also was arrested, were transported to DEA headquarters in Manhattan. After being properly informed of his constitutional rights, Alexander admitted that he purchased approximately $300 worth of cocaine along with 100 crack vials. Alexander also stated that he intended to put the crack in the vials and resell it on the street for a profit of approximately $700.

Alexander moved to suppress the post-arrest statements and the physical evidence, arguing that they were fruits of an illegal arrest. A hearing was held at which Agent Grabowski was the sole witness. Following the hearing, Judge Duffy issued a Memorandum and Order denying Alexander's motion to suppress. *United States v. Alexander*, 89 CR. 113 (KTD) (S.D.N.Y. June 2, 1989). Alexander subsequently waived his right to a jury trial, and the case was tried before the Court on stipulated facts. On October 5, 1989, Alexander was found guilty.

## DISCUSSION

On this appeal, Alexander complains that the district court erred in not granting his motion to suppress. Specifically, Alexander argues that the DEA agents' actions, which included approaching the Jaguar with unholstered guns, ordering Alexander out of the car and frisking him, were so intrusive as to amount to an arrest requiring probable cause. We disagree.

Before addressing Alexander's primary contention, however, we consider

the initial validity of the investigative stop by the DEA agents. In evaluating whether an investigative stop is reasonable under the Fourth Amendment, the reviewing court must determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *see United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). Under the first element of this inquiry, an investigative stop does not comport with the requirements of the Fourth Amendment unless "specific articulable facts, together with rational inferences from those facts, [ ] reasonably warrant suspicion" that the individual stopped was engaged in criminal activity. *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975); *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879; *United States v. Nargi*, 732 F.2d 1102, 1105 (2d Cir.1984).

■ In the present case, the agents watched as the Jaguar parked in a drug ridden neighborhood. As Alexander walked from the car he "checked out" the area. Alexander and his companion then left the Jaguar double-parked and unattended for approximately 25 minutes. When they returned to the car, Alexander was carrying a brown paper bag. The agents followed as the Jaguar was driven from the scene in an evasive manner. Moreover, the Jaguar's driver was seen looking repeatedly in the rear view mirror as if to detect possible police surveillance.

"Perhaps none of these facts, standing alone, would give rise to a reasonable suspicion; but taken together as appraised by an experienced law enforcement officer, they provided clear justification to stop the vehicle[ ] and pursue a limited investigation." *Sharpe*, 470 U.S. at 683 n. 3, 105 S.Ct. at 1573 n. 3. Numerous cases of this Court attest that the type of behavior exhibited by Alexander is sufficient to warrant an investigative stop. *See, e.g., United States v. Harley*, 682 F.2d 398, 400–01 (2d Cir.1982); *United States v. Orlando*

*Vasquez*, 638 F.2d 507, 521–22 (2d Cir. 1980), *cert. denied*, 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981); *see also United States v. Ceballos*, 654 F.2d 177, 186–87 (2d Cir.1981) (Meskill, J., dissenting). Indeed, Alexander all but concedes that a reasonable suspicion existed for the stop. Accordingly, we have no difficulty concluding that the agents were justified in stopping the Jaguar.

We next turn to the primary focus of Alexander's appeal, whether the scope of the investigative stop was reasonably related to the circumstances which justified the stop in the first place. *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879; *see Orlando Vasquez*, 638 F.2d at 520. Alexander argues that he was improperly subjected to a "maximal intrusion" which was tantamount to an arrest requiring probable cause. In advancing this argument, Alexander emphasizes that the DEA agents approached the Jaguar with guns unholstered, ordered him to exit the car and then frisked him.

■ There are no hard and fast rules for evaluating the conduct of law enforcement agents conducting investigative stops. *See Nargi*, 732 F.2d at 1106; *Harley*, 682 F.2d at 402. A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists. *See Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1926, 32 L.Ed.2d 612 (1972); *Terry*, 392 U.S. at 23–24, 27, 88 S.Ct. at 1881–1882, 1883; *United States v. Jackson*, 652 F.2d 244, 249–50 (2d Cir.), *cert. denied*, 454 U.S. 1057, 102 S.Ct. 605, 70 L.Ed.2d 594 (1981). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

There are, of course, occasions when law enforcement officers do exceed the bounds of permissible safeguards and thereby convert an otherwise legitimate investigative stop into a *de facto* arrest requiring proba-

ble cause. *See United States v. Moreno,* 897 F.2d 26, 31 (2d Cir.1990); *Ceballos,* 654 F.2d at 182–84. This, however, is not such a case.

■ Here, the individuals stopped were suspected of having just completed a narcotics purchase. In fact, the agents had reason to believe that the suspects had left the Jaguar double-parked for 25 minutes in order to make a larger drug purchase than was immediately available from the many curbside sellers. The suspects also were observed driving evasively, running red lights and speeding. Although the stop did not take place on a deserted street or in the middle of the night, *see, e.g., Nargi,* 732 F.2d at 1106; *United States v. Martinez,* 634 F.Supp. 1144, 54 (S.D.N.Y.1986), there was cause for added precaution because of the numerous innocent bystanders on the crowded city street. In addition, a car-stop is especially hazardous and supports the need for added safeguards. *See Michigan v. Long,* 463 U.S. 1032, 1047–49, 103 S.Ct. 3469, 3479–81, 77 L.Ed.2d 1201 (1983). Under these circumstances, we do not find it unreasonable that the officers decided it was appropriate to protect themselves by unholstering their guns and frisking Alexander. Indeed, this Court has repeatedly acknowledged the dangerous nature of the drug trade and the genuine need of law enforcement agents to protect themselves from the deadly threat it may pose. *See, e.g., Nargi,* 732 F.2d at 1106; *United States v. Barlin,* 686 F.2d 81, 87 (2d Cir. 1982); *United States v. Manuel Vasquez,* 634 F.2d 41, 43 (2d. Cir.1980); *see also United States v. Trullo,* 809 F.2d 108, 113 (1st Cir.) (Timbers, J., sitting by designation), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987). Accordingly, we are satisfied that the conduct of the agents was not only reasonable but prudent.

■ Finally, we are unpersuaded by Alexander's argument that the agent who directed him to exit the car and frisked him should have utilized a less intrusive alternative. The fact that an investigative stop might, in the abstract, have been accomplished by some less intrusive means does not, in and of itself, render a stop unreasonable. *See Sharpe,* 470 U.S. at 686–87, 105 S.Ct. at 1575–76 (quoting *Cady v. Dombrowski,* 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973)). As the Supreme Court has stated, "[t]he question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *Id.* 470 U.S. at 687, 105 S.Ct. at 1576. Under the circumstances of this case, we find nothing unreasonable about the precautions the agents chose to take.

## CONCLUSION

For the foregoing reasons, the judgment of conviction entered in district court is affirmed.

ROBERT L. CARTER, Senior District Judge, concurring:

I join in the judgment reached today by the Court but write separately to emphasize that had the defendant not conceded that there was a reasonable basis for the police officers' suspicion, I would vote to reverse.

My reading of the record convinces me that there was simply no legitimate basis for the officers' initial suspicion of the defendant which led them to follow his vehicle. According to the testimony of one of the officers, their suspicion was aroused because the defendant was in a neighborhood where the officers previously had observed other people making drug deals, was carrying a brown paper bag, left his car double-parked in a neighborhood where many other cars were double-parked at the time, and repeatedly looked around. In my judgment, these are inadequate grounds on which to base a reasonable suspicion of illegal conduct.

The fact that the commonplace and seemingly innocent acts of the defendant aroused the officers' suspicion to a point at which they began following him makes it clear to me that their suspicion was based on the defendant's identity rather than his actions. The testimony the officer failed to

give at the trial, but to my mind the more likely story, is that the real basis for the officers' "suspicion" was the assumption that any black man driving an expensive car in the neighborhood in question must be a drug dealer.

To be sure, as Judge Altimari points out, the defendant engaged in minor traffic violations which the officers observed as they followed him, and it may be the case that the erratic driving coupled with all the other facts provides sufficient basis for an investigative stop. This analysis, however, glosses over the all important question of why the officers started following the defendant in the first place. In this case there was no tip from an informer, the officers had no prior acquaintance with the defendant which would lead them to believe he had or was engaged in criminal activity, and there was no observation of the defendant interacting with any other people.

Judge Altimari cites several cases in support of the proposition that the defendant's behavior was sufficient to warrant an investigative stop. In my opinion, however, the cases cited demonstrate that this case proceeds on facts far slimmer than have generally been thought necessary for a reasonable suspicion. *See, e.g., United States v. Harley,* 682 F.2d 398, 399–401 (2d Cir. 1982) (reasonable suspicion found where defendant was observed briefly visiting a building which was a confirmed narcotics distribution center); *United States v. Vasquez,* 638 F.2d 507, 521–522 (2d Cir.1980) (reasonable suspicion based on defendants' meeting with a strongly suspected drug dealer then driving away erratically). *See also United States v. Gomez,* 633 F.2d 999, 1004–1005 (2d Cir.1980) (pattern of behavior consisting of stopping car in an area of high narcotics activity and having persons approach the car, when combined with reliable information that suspects were major dealers in cocaine, supported reasonable suspicion).

Instead, the case at bar is more analogous to cases in which reasonable suspicion was not found. *See, e.g., Brown v. Texas,* 443 U.S. 47, 48–49, 99 S.Ct. 2637, 2639–2640, 61 L.Ed.2d 357 (1979) (reasonable sus-

picion not warranted where defendant who "looked suspicious" was observed meeting with another person in an alley in a drug inflicted neighborhood); *United States v. Buenaventura–Ariza,* 615 F.2d 29, 32–33 (2d Cir.1980) (reasonable suspicion not warranted where defendants arrived together at airport on a flight from a drug "source city," appeared nervous, and travelled separately in the airport).

Nevertheless, I agree with Judge Altimari that the Court should not hamper police officers' attempts to protect themselves when stopping unknown persons, particularly when the actions of the police are no more egregious than here. Since the defendant has conceded that the basis for the stop was proper, I concur in the determination that the police officers' tactics in making the stop were not so intrusive as to constitute an arrest.