**UNITED STATES,**

v.

**Tyrone MARTIN.**

**No. CRIM. A. 00–710.**

United States District Court, E.D. Pennsylvania.

June 12, 2001.

382

Joseph G. Poluka, U.S. Attorney's Office, Philadelphia, PA, for U.S.

Tariq Karim El-Shabazz, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

EDUARDO C. ROBRENO, District Judge.

**AND NOW,** this 12th day of June, 2001, upon consideration of defendant's motion to suppress and the Government's response to defendant's motion, it is hereby **ORDERED** that defendant's motion (doc. no. 13) is **DENIED.** The court's Order is based on the following reasoning:

Defendant Martin filed a motion to suppress a firearm, ammunition, and crack cocaine obtained by Philadelphia police officers following a traffic stop of the defendant's vehicle occurring on February 6, 1999. Defendant Martin has argued that the officers did not have reasonable suspicion or probable cause to stop the defendant. The Government has responded that the stop was constitutionally permissible because the officers had reasonable suspicion and because the stop was precipitated by defendant Martin's violation of local and state vehicular codes. The motion raises a purely legal issue—do the objective facts known to the officers and uncontested by the defendant justify an investigatory stop of defendant Martin?

On March 26, 2001, the court held a hearing on defendant Martin's motion to suppress physical evidence based on defendant's contention that the stop of defendant's vehicle by police officers was unconstitutional. The following facts are undisputed.

On the night of February 6, 1999, Officers Whitaker and Fletcher were assigned to patrol a section of northwest Philadelphia in an unmarked vehicle and wearing plainclothes between the hours of 3:30 p.m to 11:30 p.m. At the time, Philadelphia was experiencing the effects of a recent snow storm. The 35th district, to which Officers Whitaker and Fletcher had been assigned for four and five years, respectively, had recently received calls from citizens concerning drug activity in the area and the officers were informed of those calls. While on duty that evening the officers observed narcotics sales on the 6200 block of Bouvier Street. Following these observations, the officers suspected that the individuals they observed had determined they were police officers and they decided to leave the area. While conducting this surveillance around 11:00 p.m., the officers saw a 2000 Ford Expedition drive around the block three or four times, but never saw any contact between the driver of the vehicle (defendant Martin) and the alleged narcotics activity they witnessed. The officers observed that the vehicle in question had New Jersey plates and bore an emblem indicating it was a rental vehicle. While driving at or near the intersection of Medary and 17th Streets, the officers and defendant's vehicles came face to face.

■ Although there is a dispute as to the circumstances surrounding the officers' exit from their unmarked car and approach to defendant's vehicle,[1] it is uncontested that, after arriving at the driver side window of the defendant's vehicle, the arresting officers asked the defendant to step out of his vehicle and produce his

---

1. Officer Whitaker testified as follows: Having driven away from the 6200 block of Bouvier, Officer Whitaker, who was driving eastbound on Medary, stopped at the stop sign at the intersection of Medary and 17th Street. Defendant Martin, driving the Expedition, was traveling northbound on 17th Street and attempted to make a left turn onto Medary, where the officers' car was located.

Due to snow which left only one passable lane, defendant Martin could not complete his turn and the cars were left stuck at the intersection. Both officer Whitaker and defendant Martin requested that the other back his vehicle up so his vehicle could continue on its way. Officer Whitaker attempted to back up but failed. According to Officer Whitaker, at no time during this stalemate did the officers attempt to identify themselves as police officers.

At this point, Officer Whitaker left his vehicle and proceeded towards defendant Martin's vehicle while showing his badge and orally indicating that he was a police officer. Officer Whitaker on three occasions asked defendant Martin to show him his hands, but Martin initially refused. Officer Whitaker observed movements of defendant Martin's shoulder and upper arm that suggested he was placing something in the seat area. After

license.[2]   Defendant stepped out of the vehicle on request and stated that he had no driver's license.   Thereafter, a search of the vehicle found a gun between the console and the driver's seat and numerous rounds of ammunition.

■   The defendant admits that if the stop was constitutional under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), then the subsequent search of the vehicle and defendant Martin as well as the arrest were constitutionally permissible.   Consequently, the court must focus its attention on the facts leading to the stop.   Because the court finds that the objective facts, known by the two experienced officers and undisputed by the parties, provide reasonable suspicion for the officers to approach defendant Martin, ask him questions, and request him to exit his vehicle, the court denies defendant Martin's motion to suppress.

■   Police officers may conduct an investigatory stop of an automobile if the stop is based upon a reasonable suspicion that the individuals detained by the police have engaged, or will engage, in criminal activity.   *See United States v. Rickus*, 737 F.2d 360, 364 (3d Cir.1984) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 45

---

Officer Whitaker approached the vehicle, he asked defendant Martin to exit the Expedition.   Upon requesting his license, defendant Martin acknowledged that he did not have a license.

Officer Fletcher testified as follows: While traveling eastbound on Medary, the officers saw the Expedition make a left turn from 17th onto Medary.   The cars were facing each other and the officers could not get around him due to the inclement weather.   The officers requested that defendant Martin move his vehicle to the side but for three or four minutes he did nothing.   The officers then showed defendant Martin their police badges and approximately one minute later he moved his vehicle to the left of the officers.   Officer Whitaker pulled up beside defendant Martin's vehicle close enough that, later, only one driver would be able to exit his vehicle at a time.   Officer Whitaker began asking defendant Martin questions, during which Officer Fletcher noticed defendant Martin making a stuffing motion with his upper arm and shoulder.   During this conversation, Officer Whitaker asked him if he has a license and he answered no.   Officer Whitaker then asked defendant Martin to exit the vehicle.

At the hearing, defendant Martin established that the officer's testimony concerning the events that occurred after the vehicle driven by defendant came head to head with the unmarked police vehicle carrying the arresting officers was substantially inconsistent.

Because this opinion that the arresting officers were justified in stopping the defendant's vehicle is based upon uncontested facts known by the arresting officers *before* they exited their unmarked police vehicle and approached defendant's vehicle, the apparent inconsistencies in the arresting officer's testimony need not be reviewed and it is not relevant to the inquiry.   *United States v. Hawkins*, 811 F.2d 210, 215 (3rd Cir.1987) (stating Fourth Amendment protects against unreasonable search and seizures not to punish perjury).

2.   The court finds that at the moment that the officers asked defendant to produce his license and exit his vehicle, a stop had occurred.   "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."   *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Brown v. City of Oneonta*, 195 F.3d 111, 121 (2d Cir.1999).   "The question is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter."   *United States v. Roby*, 122 F.3d 1120, 1124 (8th Cir.1997); *United States v. Green*, 111 F.3d 515, 520 (7th Cir.1997).   At the point in time when the officers had shown defendant Martin their badges, requested his driver's license, and asked him to exit his vehicle, a reasonable person would not have felt free to leave.

L.Ed.2d 607 (1975)). "Reasonable suspicion must be based upon 'specific and articulable facts' which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868; *Brignoni–Ponce*, 422 U.S. at 884, 95 S.Ct. 2574). "In determining whether a stop is justified, the court must view the circumstances surrounding the stop in their entirety, giving due weight to the experience of the officers." *Id.* (citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Brown v. Texas*, 443 U.S. at 52 n. 2, 99 S.Ct. 2637). "[S]uch an investigative stop must be 'reasonably related in scope to the justification for its initiation.'" *Id.* (quoting *Terry*, 392 U.S. at 29, 88 S.Ct. 1868).

█ In making the determination of reasonable suspicion, the "legality of a stop must be judged by the objective facts known to the seizing officers rather than by the justifications articulated by them." *United States v. Hawkins*, 811 F.2d 210, 213 (3d Cir.1987). Furthermore, "[t]he reasonable suspicion determination does not depend upon any one factor, but on the totality of the circumstances." *See United States v. Brugal*, 209 F.3d 353, 359 (4th Cir.2000) (citing *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). "[T]he Supreme Court has recognized that factors consistent with innocent travel can, when taken together, give rise to reasonable suspicion." *Id.* (citing *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 677, 145 L.Ed.2d 570 (2000); *Sokolow*, 490 U.S. at 9, 109 S.Ct. 1581). In this case, it is uncontested that the officers were experienced police officers and that the following facts were known to them prior to the arresting officers' exiting their unmarked vehicle and approaching the defendant's vehicle:

First, defendant Martin was driving his vehicle late at night. *See United States v. Mattarolo*, 209 F.3d 1153, 1156 (9th Cir. 2000) (recognizing lateness of the evening justifies, in part, a finding of reasonable suspicion); *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir.2000) (same); *Rickus*, 737 F.2d at 364 (same);

Second, defendant Martin circled the block three or four times in an area where the officers had observed narcotics transactions. *See United States v. Montgomery*, 561 F.2d 875, 878 (D.C.Cir.1977) (considering defendant circling block to be factor to consider under *Terry* but finding it alone does not justify a stop);

Third, the area where Martin circled the block was known by the officers as an area of drug activity. *See Rickus*, 737 F.2d at 365 ("The reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely."); *United States v. Bayless*, 201 F.3d at 133 (finding reputation of area for drug activity, in part, provided reasonable suspicion justifying stop); *United States v. Alexander*, 907 F.2d 269, 272 (2d Cir.1990) (same);

Fourth, defendant Martin was driving a vehicle with an out-of-state license and with an emblem indicating it was a rental vehicle. *See Bayless*, 201 F.3d at 120 (noting out-of-state license provided, in part, justification for investigatory stop under *Terry*); *Orricer v. Erickson*, 471 F.2d 1204, 1207 (8th Cir.1973) (same); *see also United States v. Brugal*, 209 F.3d 353, 359 (4th Cir.2000) (finding defendant's use of rental vehicle supported, in part, a finding of reasonable suspicion); *United States v. Coggins*, 986 F.2d 651, 655 (3rd Cir.1993) (concluding defendant's use of rental car supported, in part, a finding of reasonable suspicion); *United States v. Streifel*, 781 F.2d 953, 957 (1st Cir.1986) (same);

Fifth, Officers Whitaker and Fletcher had five and four years experience, respectively, as Philadelphia police officers at the 35th district where the events in question

took place. *See Cortez,* 449 U.S. at 418, 101 S.Ct. 690 (finding experience of officers is a relevant factor in determining if officers had reasonable suspicion).

Although any one of these factors may not on its own raise reasonable suspicion, the court concludes that, taken collectively all these factors and in light of the circumstances, Officers Whitaker and Fletcher were legally justified in asking defendant for his driver's license and requesting he exit his vehicle. *See Terry,* 392 U.S. at 21, 88 S.Ct. 1868 (requiring reasonable suspicion to be based on objective facts considered collectively).[3]

▪ In conclusion,[4] the court finds that the brief investigatory stop of defendant Martin was constitutionally permissible.

**AND IT IS SO ORDERED.**

---

**3.** Defendant Martin counters that there were two objective factors known to the officers which detract from the *Terry* calculus needed to justify the stop. One, defendant Martin claims that the defendant's conduct in circling the block three to four times is consistent with an equally innocent explanation that defendant Martin was looking for a place to park after the recent snow storm. Although this is theoretically possible, the record is devoid of any evidence that there were no parking spaces available on the night of the incident. Two, defendant Martin argues that although the tag on the defendant's vehicle was out of state, the tag was from New Jersey, a state geographically contiguous to Pennsylvania. Even assuming that defendant is correct that New Jersey tags are entitled to a lesser quantum of "suspicion" than are those from more remote states, this factor is not sufficient to negate the arresting officers' *Terry* calculus.

**4.** The court rejects the Government's contention that the stop was justified because the officers had probable cause to believe that the motorist had committed a traffic offense by blocking access to a public highway. *See, e.g., Ohio v. Robinette,* 519 U.S. 33, 38, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Neither the testimony of Officer Whitaker or Officer Fletcher supports such a finding. In Officer Whitaker's testimony, the plainclothes officers never identified themselves as police officers until Officer Whitaker stepped out of his unmarked vehicle and asked the defendant to exit the Ford Expedition. In Officer Fletcher's testimony, defendant Martin did in fact move his vehicle one minute after the officers identified themselves as police officers. Furthermore, the inconsistencies in the officers testimony regarding the events following the impasse at or near Medary and 17th Streets make it impossible to determine whether defendant Martin did in fact block a road, whether defendant Martin had a legal privilege to block the road due to snow, or whether defendant Martin had the right of way. Therefore, the evidence does not support a finding that the officers had probable cause to stop defendant Martin for blocking access to a public road.