**The UNITED STATES of America,**

v.

**Michael FOREMAN, Defendant.**

**No. 96 CR. 1209(HB).**

United States District Court,
S.D. New York.

Feb. 2, 1998.

---

David H. Weiss, Cary Bricker, New York City, for Michael Foreman.

Evan T. Barr, Asst. U.S. Atty., Mary Jo White, U.S. Atty., Criminal Div., New York City, for U.S.

## OPINION AND ORDER

BAER, District Judge.

Defendant Michael Foreman ("Foreman") moves for an order granting the following relief: (1) suppression of the physical evidence seized from Foreman's vehicle at or after his arrest on December 10, 1996; (2) suppression of all statements made by Foreman to any law enforcement personnel after his arrest on December 10, 1996. On January 26–28, 1998, I held a suppression hearing on this matter. For the reasons set forth below Foreman's motion to suppress the evidence seized from his vehicle is denied, and his motion to suppress certain post-arrest statements is granted in part and denied in part.

### I. Background

On December 10, 1996, police officers conducted a surveillance at the intersection of Olinville and Allerton Avenues in the Bronx and observed Foreman, who had been identified as a drug dealer by individuals in the

community (Tr.[1] at 16–17), standing on a street corner engaged in conversation with other individuals. Officer Berdecia testified in some detail that after an hour or so he observed the defendant in what he characterized as a hand-to-hand drug transaction with a light-skinned male. Tr. 36–37. Foreman then got into his car and left the area; at that time the police made no effort to apprehend him. Tr. at 39. Foreman returned, as expected by the police, to the same location several hours later. When he left the area for a second time in his car, Officer Berdecia observed him make a U-turn on Allerton Avenue and then pull in front of a liquor store. Tr. 40–41. Officer Berdecia radioed the field team at that time and instructed them to arrest Foreman. Tr. at 44. Foreman was arrested by the officers after he had exited his car.[2] Officer Von Kessel, a member of the back-up team, testified that as he walked alongside the passenger side of Foreman's car he looked in through the windshield and saw a clear plastic bag containing a white powder on the front passenger seat (which was later determined to be 29.8 grams of a mixture containing cocaine), which he then secured. Tr. at 187–90. Foreman contends that Von Kessel's testimony is untrue and that, although there was cocaine in his glove compartment, there was no cocaine on the passenger seat, Tr. at 323, a not implausible scenario. Following Foreman's arrest, his car was transported to the 49th Precinct in Brooklyn where it was searched and inventoried. Tr. at 66, 130.

Foreman was eventually arraigned and released in Bronx Criminal Court. He was represented by counsel at the arraignment. Tr. at 343–44. On December 16th, Foreman returned to court where he was arrested on a federal arrest warrant. Foreman was then driven back to the 49th precinct by Officers Heber and Berdecia on December 16th, and later turned over to federal agents. He was charged with the identical conduct in federal court as he was in state court, but as a federal, rather than a state offense. Tr. at 348. Foreman contends that the federal agents failed to advise him of his constitutional rights, while Agent Maggiacomo testified that Foreman was read his rights directly from the DEA Form 13A and that during the reading and the defendant's response his partner and an officer from the 49th precinct were present for all or at least part of the proceeding. Tr. at 70–71, 277–80, 347.

## II. Discussion

### A. The Evidence Seized from Foreman's Automobile

Foreman contends that the physical evidence seized from his car should be suppressed because the officers lacked a sufficient basis to stop him and search his vehicle. The Government contends that it had probable cause to stop Mr. Foreman and search his automobile based on the illegal u-turn and the hand-to-hand transaction which the police officers observed. I find that the search was valid for any number of reasons.

First, Officer Von Kessel testified that he saw the cocaine through the windshield of Foreman's car on the passenger seat. Tr. at 187. Assuming Von Kessel's testimony is true, the cocaine is admissible under the "plain view" exception to the Fourth Amendment warrant requirement. This exception " 'authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity.' " *U.S. v. Scopo*, 19 F.3d 777, 782 (2d Cir.1994)(quoting *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983)), *cert. denied*, 513 U.S. 877, 115 S.Ct. 207, 130 L.Ed.2d 136 (1994). Here, I find that the police had the authority to stop and arrest Foreman based on their observation of the hand-to-hand transaction and the U-turn. Officer Von Kessel then allegedly saw the

---

1. "Tr." stands for the transcript of the suppression hearing held in this matter.

2. Foreman claims that he was beaten in the course of the arrest by the police officers. Tr. at 334–36. However, the police photographs of Foreman, unearthed a little late by the Government, and taken just before he was to be escorted to central booking on December 10, 1996 belie this testimony. Govt. Exhibit 31–33.

cocaine on the seat of the car, and the incriminating nature of the cocaine was immediately apparent to him. Thus, the police were justified in stopping Foreman and in seizing the cocaine. *See Scopo*, 19 F.3d at 782.

Even if Von Kessel found the cocaine in the glove compartment, where Foreman testified it was, the cocaine would nevertheless be admissible. It is well-established that the police may conduct a warrantless search on an automobile and all containers found therein, provided that at the time of the search, there is probable cause to believe that contraband is secreted at some unspecified location within the automobile. *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Given the hand-to-hand transaction witnessed by Officer Berdecia, I find that there was sufficient probable cause to believe that Foreman had stored drugs somewhere in his car.

Moreover, the police were also permitted to contemporaneously conduct a warrantless search of Foreman's automobile and the passenger compartment as a search incident to a lawful arrest. *See U.S. v. Gonzalez*, 71 F.3d 819, 825 (11th Cir.1996)(when occupant of an automobile is subject of a lawful arrest, the Fourth Amendment permits officers to contemporaneously conduct a warrantless search not only of occupant but also of passenger compartment and any closed or open containers found in this area of the automobile); *U.S. v. Scopo*, 19 F.3d 777 (2d Cir.1994)(police officers who had probable cause to stop and arrest defendant who had engaged in traffic violation, were entitled to search the defendant and his grab space and in the car); *U.S. v. Muyet*, 946 F.Supp. 302, 306 n. 6 (S.D.N.Y.1996) (same). The police had probable cause to stop and arrest Foreman due to their observation of the hand-to-hand transaction and the U-turn and were therefore permitted to search his passenger compartment and any containers therein.

Foreman contends that since he was outside of his car at the time of the arrest, even assuming there was probable cause to arrest him, there was no probable cause to search the car. Foremans was stopped by the police when he had exited his auto and was walking away to go into the liquor store. Tr. at 46, 342. Although the testimony is not clear exactly how far from the car he was when he was stopped, he was somewhere near the front of his car. Tr. at 46, 186–88. At most he was midway on his way across the sidewalk to the liquor store or no more than a few feet from his car. Thus, I find that Foreman's car and its passenger compartment were in the immediate surrounding area such that the search incident to a lawful arrest exception applies. *See, e.g., Rodriguez v. U.S.*, 878 F.Supp. 20, 24 (S.D.N.Y. 1995) (where suspect was arrested at a public telephone in front of the building where his car was parked, and because suspect had been observed with drugs as a result of a surveillance there was probable cause to arrest him, and DEA agents were entitled to search his car); *Cf. U.S. v. Strahan*, 984 F.2d 155 (6th Cir.1992)(search of car invalid where defendant was 30 feet away from vehicle). In any event, because of the several grounds on which the search must be validated, even if the car was not within Foreman's "grab space," the drugs are admissible.

Finally, even if the search of Foreman's car on Allerton Avenue was illegal, the cocaine would nevertheless be admissible because it would have been discovered pursuant to the lawful inventory search that was conducted at the precinct by Officer Berdecia. "When a person is arrested in a place other than his home, the arresting officers may 'impound the personal effects that are with him at the time to ensure the safety of those effects or to remove nuisances from the area'" and may conduct an inventory search of the property to avert any danger the property may pose, protect the property and protect the police from claims of theft or negligent treatment of property. *See U.S. v. Perea*, 986 F.2d 633, 643–44 (2d Cir.1993). Such an inventory search need not be justified by probable cause. *See South Dakota v. Opperman*, 428 U.S. 364, 370 n. 5, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Furthermore, if permitted by the applicable procedure, an officer may search containers in the car in the course of an inventory search as long as they act in good faith pursuant to an estab-

lished routine. *See U.S. v. Thompson*, 29 F.3d 62, 65 (2d Cir.1994). An officer also may seize contraband or evidence recovered as a result of an inventory search. *See Thompson*, 29 F.3d at 65.

Here, the police had probable cause to arrest Foreman based on the observation of the hand-to-hand transaction and the U-turn. Foreman's car was then driven back to the precinct, where Officer Berdecia searched and, in accordance with applicable procedure, inventoried the entire contents of the car. Tr. at 66–67, 130–31. I find that the evidence indicated that Officer Berdecia conducted an authorized inventory search, itemizing everything he found within the car, including the glove compartment, and transferring it to the Property Clerk. Therefore, the cocaine he found in Foreman's car would be admissible, even in the absence of probable cause for the search on Allerton Avenue, since it inevitably would have been found in the course of Officer Berdecia's inventory. *See Perea*, 986 F.2d 633.[3]

Accordingly, defendant's motion to suppress the evidence retrieved from his car, including the cocaine, is denied. While I continue to worry about uncorroborated police testimony, *see U.S. v. Bayless*, 921 F.Supp. 211, 213–16 (S.D.N.Y.1996)(Baer, J.), especially in light of thoughtful, explicit and sometimes reasonable sounding denials by the defendant, here the evidence is not only corroborated at just about every juncture, but there appear to be at least three theories under which the cocaine is admissible.

### B. Foreman's Post–Arrest Statements

 Foreman argues that statements he made to the federal agents after his arrest should be suppressed because the custodial questioning by the federal agents occurred after counsel had appeared for him on his state charge.[4] As I understand it, the government does not seek the admission of, or there were no statements made by the defen-

dant following his arrest on December 10, 1996. Once a defendant has invoked his Sixth Amendment right to counsel any subsequent waiver of that right is invalid in the absence of counsel. *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The Court subsequently held that this Sixth Amendment right is offense-specific, however, meaning that an accused's invocation of the right to counsel in connection with one set of charges does not bar police from initiating questioning without counsel present on another, unrelated charge. *McNeil v. Wisconsin*, 501 U.S. 171, 175–82, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). An exception to the offense-specific requirement occurs when the pending charge is so inextricably intertwined with the charge under investigation that the right to counsel for the pending charge cannot constitutionally be isolated from the right to counsel for the uncharged offense. *See U.S. v. Hines*, 963 F.2d 255, 257 (9th Cir.1992); *see also U.S. v. Arnold*, 106 F.3d 37 (3d Cir.1997); *U.S. v. Friedman*, 1996 WL 612456 (E.D.N.Y. Aug. 13, 1996).

Here, Foreman was arraigned on a felony complaint in Bronx County court where he was represented by counsel. Within the week, he was rearrested on the identical charge, simply by another sovereign, and interrogated by Special Agents Maggiacomo and Rubinstein. Accordingly, and while this Circuit has not been heard on this point, I find that the federal arrest was so intertwined with the state arrest such that Foreman, having invoked his right to counsel in the State proceeding and counsel having been assigned, could not on his own waive his right to counsel. Put another way, an effective waiver required counsel to have been present when he was questioned several days later on federal charges.

 The government consents to the suppression of statements made to Agents Maggiacomo and Rubinstein on December

---

**3.** Foreman argues that this was not an inventory, but an attempt to collect evidence. However, the fact that an officer may harbor an investigatory motive does not invalidate an otherwise appropriate inventory search. *See Whren v. U.S.* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

**4.** Foreman also argues that he was not advised of his constitutional rights by the federal agents as required by *Miranda* . However, I find that the corroborated evidence establishes that Foreman was read his *Miranda* rights by the federal agents. Tr. at 70–71, 277–80.

16, 1996 since state charges had not yet been dismissed at the time of this interrogation. However the Government contends that certain statements Foreman made to Officers Heber and Berdecia while traveling from the Bronx to Brooklyn Central Booking on December 16 should not be suppressed because they were not the product of custodial interrogation. The Supreme Court has defined interrogation as "express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The functional equivalent of interrogation consists of "words or actions on the part of the police...that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. at 301. Where statements are not the product of interrogation, but have been volunteered, *Miranda* rights do not attach. *U.S. v. Vigo,* 487 F.2d 295, 299 (2d Cir.1973). Moreover, there is no Sixth Amendment violation where a defendant volunteers statements. *See, e.g., Huckelbury v. Dugger,* 847 F.2d 732, 734 (11th Cir.1988)(no Sixth Amendment violation where defendant requested to speak with sheriff to inquire about possible sentence for murder charge and then voluntarily confessed); *U.S. v. Walls,* 70 F.3d 1323 (D.C.Cir.1995)(no Sixth Amendment violation when indicted defendant incriminated himself while being booked because police did not create an atmosphere designed to induce him to talk and defendant continued talking despite agents' warning that he had right to counsel), *cert. denied,* ——U.S.——, 117 S.Ct. 90 , 136 L.Ed.2d 46(1996); *See also Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)(where a defendant has requested counsel, authorities cannot question him unless the defendant initiates further communication, exchanges or conversations).

Officer Heber testified that during the car trip to Brooklyn, Foreman asked him where he was going and what was taking place. Heber responded that he was going to Brooklyn central booking and in the morning would be going to a federal court. Foreman then volunteered that he "really messed up" and that he "would just have to do his time." Officer Heber then suggested that Foreman could help himself by cooperating.

Foreman stated in response that he would think about it (cooperating). Tr. 242–43. Officer Berdecia, the driver of the car, testified that although he did not question Foreman or initiate any conversation, that Foreman nevertheless stated that he bought the drugs to snort from a Spanish guy. Tr. 72–73. Foreman testified that the officers kept asking him and telling him that he should cooperate and that the judge would be more lenient on him. Foreman states that he told the officers that he "messed up" and "would do [his] time." Tr. at 349.

I find that the first two statements Foreman made following Officer Heber's description of where he was going—that he "really messed up" and that he "would just have to do his time"—were voluntary statements and are thus admissible. *See Oregon v. Bradshaw,* 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983)(where defendant asked "well, what is going to happen to me now?" the Court found that he had initiated further conversation and those conversations were admissible). Officer Heber's description of where they were going was simply in response to Foreman's question and was not improperly designed to elicit an incriminating response from Foreman. Thus, they are not the product of interrogation, and are admissible.

However, I find that the remainder of Foreman's statement in the car ride must be suppressed. Officer Heber admits that he asked Foreman to cooperate and told him it would help him if he did. I find that by suggesting that Foreman could do better by speaking with the police, Officer Heber engaged in the functional equivalent of interrogation. Heber's statement to Foreman that he could help himself by cooperating constitute words that are reasonably likely to elicit an incriminating response from the suspect. Thus any statements by Foreman after this point were the product of interrogation and should be suppressed. The case cited by the Government in support of these statements admissibility is not applicable here. In *U.S. v. Dickson,* 58 F.3d 1258, 1265 (8th Cir.1995), *cert denied,* —— U.S. ——, 116 S.Ct. 747, 133 L.Ed.2d 695 (1996), the defendant was being held at police headquarters and the police

asked him if he would like to talk. The suspect stated that maybe he should get a lawyer, at which time the police got up but stated that if he changed his mind he could give them a call. The suspect then stated that he changed his mind and spoke to the agents. In that case, unlike here, there was no suggestion by the police that by talking to them the suspect could improve his situation or receive a lesser sentence.

With respect to Foreman's alleged statement that he bought the drugs to snort from a Spanish guy, the testimony does not indicate when during the trip or the context in which this statement was made and Officer Berdecia is the only officer, although Officer Heber was sitting right there, who testified that this statement was made. Assuming this statement was made, I find that it is reasonable to assume that this statement can only have been made after Foreman was encouraged to cooperate. It is highly unlikely that Foreman would simply blurt out that he bought the cocaine from a Spanish guy without any prompting from the police officer. I therefore find that this statement must be suppressed, along with the other statements that were made after Berdecia told defendant he should cooperate, i.e., that he would just do his time and that he would think about cooperating.

### III. *Conclusion*

For the foregoing reasons, Foreman's motion to suppress the physical evidence seized from his automobile is denied, and his motion to suppress his post-arrest statement is granted in part and denied in part.

**SO ORDERED.**